**IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Gislese Hall-Adejola, as Special ) <br> Representative of the Estate of ) <br> Jacob Adejola, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Will County, Will County Sheriff's ) <br> Department, Will County Sheriff Kelley, ) <br> John Disera, Emma Perez, Christopher ) <br> Haas, Jason Prokop, Randy Owens, ) <br> Janette Bishop-Green, Mario Calderon, ) <br> Unknown Will County Officers, ) <br> Laura Kane, Unknown Wellpath ) <br> Employees, and WELLPATH, LLC, ) <br> ) <br> Defendants. ) | Case No. |

**PLAINTIFF'S COMPLAINT**

Plaintiff Gislese Hall-Adejola, as Special Representative of the Estate of Jacob Adejola, through her attorneys Hale & Monico LLC, complains of Defendants Will County, Will County Sheriff's Department, Will County Sheriff Kelley, and Will County Officers John Disera, Emma Perez, Christopher Haas, Jason Prokop, Randy Owens, Janette Bishop-Green, and Mario Calderon, and Unknown Will County Officers, individually and as agents and employees of Will County; and WELLPATH LLC (formerly known as Correct Care Solutions) and Laura Kane and Unknown Wellpath Employees, individually and as agents and employees of WELLPATH LLC. In support, Plaintiff states:

**INTRODUCTION**

**1.** On March 18, 2019, Jacob Adejola was booked into the Will County Jail to serve a 180-day sentence for driving with a revoked or suspended license. Due to the inadequate

1

medical care and inhumane treatment, Jacob's sentence ended up being one of death as he lasted only 47 days in the custody of the Will County Jail before he tragically died.

2. Jacob left behind a loving family who still have questions over how a generally healthy man can be taken into custody and die less than two months later.

3. Plaintiff brings this lawsuit not only to get answers as to how and why Jacob's life was cut short but to bring to light the constitutionally deficient medical treatment provided to inmates at the Will County Jail.

## PARTIES

4. Plaintiff Gislese Hall-Adejola is the surviving spouse of Jacob Adejola.

5. Jacob Adejola was a post-trial detainee at the Will County Jail at the time of his death.

6. Defendant Mike Kelley is the elected Sheriff of Will County, whose office is responsible for the oversight of the Will County Jail. Defendant Kelley is sued in his official capacity.

7. Defendants Will County Officers John Disera, Emma Perez, Christopher Haas, Jason Prokop, Randy Owens, Janette Bishop-Green, and Mario Calderon, and Unknown Will County Officers (collectively "Defendant Correctional Officers") are sued in their individual capacities. During the relevant time, Defendant Correctional Officers acted within the scope of their employment and/or agency with Defendant Will County Sheriff's Department and under color of law.

8. Defendant Will County Sheriff's Department was, during the relevant time, the employer of Defendant Correctional Officers. Defendant Will County Sheriff's Department is named as a party pursuant to the legal theory of *Respondeat Superior*.

**9.** Defendant Will County is municipal corporation organized, existing, and doing business under the laws of the State of Illinois. Defendant Will County is named as a party pursuant to the indemnification requirements of 745 ILCS 10/9-102.

**10.** Defendants Laura Kane and Unknown Wellpath Employees were responsible for the day-to-day medical care of inmates at the Will County Jail. This responsibility included, but was not limited to, the assessment of need for medical care, writing reports on an inmate's medical issues, inquiring of the inmates about their health and medications they had been prescribed, making requests for follow-up medical care for inmates, and keeping the correctional staff and treating medical professionals informed of any medical problems an inmate has. During the relevant time, Defendants Kane and Unknown Wellpath Employees were employed by Defendant Wellpath and acted within the scope of their employment and/or agency with Defendant Wellpath and under color of law. These defendants are sued in their individual capacities.

**11.** Defendant Wellpath LLC is a corporation organized under the laws of Delaware and does business within the State of Illinois. During the relevant time, Defendant Wellpath had a contact with Will County, Illinois and the Will County Sheriff's Department to provide medical care to inmates at the Will County Jail. During the relevant time, Defendant Wellpath was the employer of Defendants Kane and Unknown Wellpath Employees.

## JURISDICTION

**12.** This action arises under the Constitutional of the United States, under the laws of the United States, and under the laws of the State of Illinois.

**13.** The jurisdiction of this Court is invoked under the provisions of 28 U.S.C. §§ 1331 and 1343. Plaintiff also invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367.

**14.** Venue is proper in the United States District Court for the Northern District of Illinois, Eastern Division, under 28 U.S.C. § 1391(b)(2) as the events complained of occurred within this district.

## FACTS

**15.** On or about March 18, 2019, Jacob Adejola was booked into the Will County Jail to serve a 180-day sentence for driving with a revoked or suspended license.

**16.** When Jacob Adejola was booking into the Will County Jail on March 18, he was five foot seven inches tall and weighed 188 pounds. Other than minimal difficulty walking up stairs due to his age, Jacob Adejola was in good health.

**17.** On March 28, 2019, Jacob Adejola complained of feeling light headed. He was transferred to the medical division of the Will County Jail.

**18.** On April 12, 2019, Jacob Adejola complained to correctional officers that he was having a difficult time breathing and that he had pain in his chest.

**19.** Defendants Disera, Perez, Haas, Prokop, Owens, Bishop-Green, and Calderon responded, along with Defendant Kane.

**20.** Defendant Kane, upon information and belief, briefly evaluated Jacob Adejola and unilaterally determined that Jacob did not need to see a doctor for his breathing problems and the pain in his chest.

**21.** Jacob Adejola's inability to breathe without difficulty and the pain in his chest were an objectively serious medical condition.

**22.** Difficulty breathing with chest pain are symptoms commonly associated with heart problems. Defendant Kane's decision to ignore these symptoms and, instead, to deny Jacob Adejola the opportunity to be evaluated by a doctor shows that Defendant Kane was deliberately and subjectively indifferent to the Jacob Adejola's serious medical needs. The refusal to have Jacob Adejola evaluated for potential heart problems – or any medical condition – was an obvious risk that departed radically from accepted professional judgment, practice, or standards.

**23.** Further, difficulty breathing and chest pains is an obviously serious medical condition that a need for treatment for those issues is obvious even to a layperson.

**24.** Defendants Disera, Perez, Haas, Prokop, Owens, Bishop-Green, and Calderon knew Jacob Adejola was having difficulty breathing and chest pains and were informed by Defendant Kane that no medical treatment was necessary.

**25.** The risks associated with ignoring chest pains and difficulty breathing are obvious; a reasonable person would not have disregarded providing Jacob Adejola with any medical treatment.

**26.** Despite having difficulty breathing and chest pain, Jacob Adejola was not evaluated by a doctor.

**27.** Following the April 12 complaints of chest pains and difficulty breathing, Jacob Adejola was documented as having difficulty eating – sometimes only being able to eat with the assistance of a nurse. Additionally, Jacob Adejola made complaints of weakness.

**28.** On April 23, Jacob Adejola was documented as having an "altered mental status." He was finally sent to St. Joseph's Hospital but was returned the same day.

**29.** Upon information and belief, there was a lack of policy in effect that would allow for the dissemination of important medical information to be relayed from the medical

5

professionals at the Will County Jail to the medical professionals at St. Joseph's Hospital and other medical facilities.

30. In this case, the only information relayed to the St. Joseph's Hospital professionals was relayed by Jacob Adejola – who was suffering from altered mental status – and a correctional officer, who is not trained in medicine. Upon information and belief, no paperwork completed by any medical professionals documenting Jacob Adejola's medical issues were provided to the St. Joseph's medical team.

31. Upon information and belief, the issues of which Jacob Adejola had complained to Defendants of previously – the chest pain and difficulty breathing – were not relayed by Defendants to the hospital staff at St. Joseph's; this prevented the St. Joseph's medical staff from being able to accurately and completely evaluated Jacob Adejola.

32. On April 23, Jacob Adejola weigh was calculated by the medical professionals at St. Joseph's hospital to be 160.6 pounds.

33. Jacob had lost 28 pounds in the 36 days he had been in custody at the Will County Jail.

34. Part of Jacob's discharge instructions were that he was to be returned to the emergency room if his symptoms – including an inability to drink and eat or confusion, weakness, or vomiting – worsened.

35. While Jacob Adejola was at the hospital, correctional officers inspected his personal belongings. A significant amount of uneaten and partially eaten food was discovered in his private bin.

36. Upon information and belief, the nursing staff were informed of the hoarded/uneaten food.

37. Following his return to the Will County Jail, Jacob Adejola continued to have difficulty eating and needed assistance from unknown nurses at times.

38. On May 3, Jacob Adejola was sent to St. Joseph's Hospital.

39. Upon information and belief, Jacob Adejola had complained to correctional officers of a shortness of breath and then stopped breathing.

40. On May 4, Jacob Adejola passed away.

41. During his time in custody, Jacob Adejola's health deteriorated from having no difficulty walking to needing the assistance of a walker.

42. The complaints of difficulty breathing, chest pains, and inability to eat were serious medical issues for which Jacob Adejola received inadequate medical treatment. No minimally competent medical professional would have failed to send Jacob Adejola for medical treatment under these circumstances.

43. During his time in custody, upon information and belief, Jacob Adejola's serious medical needs were observed and/or brought to the attention of Unknown Will County Officers and Unknown Wellpath Employees, who similarly failed to provide adequate medical care and acted objectively unreasonable and/or deliberately indifferent to Jacob Adejola's serious medical needs.

## CLAIMS

### COUNT I
### 42 U.S.C. § 1983
### Individual Defendants

44. Plaintiff incorporates all paragraphs of this Complaint as though fully set forth herein.

**45.** As more fully described above, Jacob Adejola had a serious medical need: he suffered from difficulty breathing, chest pains, weakness, and an inability to eat.

**46.** As more fully described above, Defendants' actions or omissions with respect to Jacob Adejola were objectively unreasonable and/or deliberately indifferent towards the serious medical needs of Jacob and to the substantial risk of harm to him.

**47.** Defendants failed to take appropriate steps to treat, supervise, and/or protect Jacob Adejola, which was objectively unreasonable and/or constituted deliberate indifference towards his serious medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

**48.** As a result of the objectively unreasonable and/or deliberately indifferent way in which Defendants treated Jacob Adejola, they directly and proximately caused him to suffer physical and emotional pain and suffering before he died, diminished his chances of survival and/or caused the loss of his life, and caused his estate to incur financial and burial expenses .

WHEREFORE, Plaintiff prays for judgment against Defendants and for an award of compensatory damages, punitive damages, attorneys' fees, costs, and any other relief the Court deems just and appropriate.

## COUNT II
## 42 U.S.C. § 1983
### *Monell* claim against Defendant Kelley

**49.** Plaintiff incorporates all paragraphs of this Complaint as though fully set forth herein.

**50.** A sheriff in any county in Illinois, such as Defendant Kelley, is always the final policy-making authority over a county jail's operation.

**51.** As detailed above, Jacob Adejola's constitutional rights were violated when Individual Defendants were objectively unreasonable and/or deliberately indifferent to Jacob Adejola's serious medical needs.

**52.** The violations of Jacob Adejola's rights were caused in party by the customs, policies, and widespread practices of Defendant Kelley, which results in the failure to provide adequate medical care to inmates at the Will County Jail.

**53.** These widespread or "de facto" policies include : (1) fostering an atmosphere where correctional officers and medical staff are permitted to disregard inmates who complaint that they are sick; (2) failing to supervise and monitor the work being done by Defendant Officers who are working at the jail to make sure that inmates with serious health issues are being cared for; (3) failing to provide adequate training to correctional officers so that they can recognize inmates who are struggling with health problems so that they can be promptly and sufficiently addressed; (4) failing to ensure that there is a prompt response to all inmate requests for medical attention; and (5) failing to enact and abide by a policy wherein all relevant medical information and records of an inmate are provided to non-jail medical professionals to ensure that the inmate receives sufficient medical treatment.

**54.** Defendant Will County and Defendant Kelley have long been aware that failing to provide adequate and timely medical treatment to inmates experiencing serious and life-threatening medical needs is unconstitutional.

**55.** As a direct and proximate cause of these acts and omissions, Jacob Adejola experienced severe pain and suffering and ultimately death, and his estate incurred funeral and burial expenses.

WHEREFORE, Plaintiff prays for judgment against Defendant Kelley and for an award of compensatory damages, punitive damages, attorneys' fees, costs, and any other relief the Court deems just and appropriate.

### Count III
### 42 U.S.C. § 1983
### *Monell* claim against Defendant Wellpath

**56.** Plaintiff incorporates all paragraphs of this Complaint as though fully set forth herein.

**57.** Defendant Wellpath is one of the nation's largest for-profit providers of health care to correctional facilities. Upon information and belief, Defendant Wellpath has have contracts with over 500 facilities in 34 states.

**58.** Upon information and belief, Defendant Wellpath (formerly known as Correct Care Solutions) has engaged in a company-wide policy of "cost containment" and focuses on saving money at the expense of health care to incarcerated patients.

**59.** Defendant Wellpath's focus on saving costs at the expense of adequate healthcare was the focus of an investigative report by CNN. https://www.cnn.com/interactive/2019/06/us/jail-health-care-ccs-invs/.

**60.** This investigation revealed that Defendant Wellpath "repeatedly relied on inexperienced workers, offered minimal training and understaffed facilities." Indeed, the report found that "doctors and nurses have failed to diagnose and monitor life-threatening illnesses and chronic diseases."

**61.** Between 2014 and 2018, Defendant Wellpath was accused of contributing to more than 70 deaths of incarcerated individuals in a slew of lawsuits relating to Defendant Wellpath's inadequate medical care.

**62.** Among the numerous problems with Defendant Wellpath's care, according to the report, is a pattern of lower-level nurses making critical decisions. Here, Defendant Kane – a nurse – made the determination that Jacob Adejola did not need medical treatment despite his complaints of chest pain and a shortness of breath.

**63.** In December 2018, the United States Department of Justice completed an investigation into the Hampton Roads Regional Jail in Virginia.

**64.** Defendant Wellpath is responsible for the medical treatment of inmates at Hampton Roads Regional Jail.

**65.** The DOJ found that there was reasonable cause to believe that the conditions at the jail violated both the Eighth and Fourteen Amendments to the Constitution through, among other deficiencies, its failure to provide adequate medical care to prisoners.

**66.** Defendant Wellpath has assumed, by virtue of the contract with Will County and the funds paid by Will County, responsibility of providing medical care to all inmates of the Will County Jail.

**67.** Defendant Wellpath was responsible for the establishment and implementation of policies and procedures to make sure that inmates receive basic medical care consistent with what the United States Constitution and medical professionalism and ethics require.

**68.** As detained above, Jacob Adejola's constitutional rights were violated when Defendant Kane and Unknown Wellpath Employees were objectively unreasonable and/or deliberately indifferent towards Jacob Adejola's serious medical needs.

**69.** The violation of Jacob Adejola's constitutional rights were caused in part by the customs, policies, and widespread practices of Defendant Wellpath, which results in the failure to provide adequate medical care to the inmates who rely on the company for medical care and treatment.

**70.** These widespread or "de facto" policies include : (1) failing to establish rules and practices to make sure that inmate information is promptly reviewed by a medical professional so that those inmates who need prompt care are helped; (2) failing to establish a system for Defendants Kane and Unknown Wellpath Employees to contact doctors who had been treating an inmate prior to incarceration so that adequate medical care could be continued and coordinated; (3) failing to ensure that inmate requests for medical attention are reviewed and acted upon in a prompt manner; (4) failing to properly train employees to ensure the inmate medical needs are evaluated and treated appropriately; (5) failing to ensure inmates are seen by non-jail medical professionals promptly when medical treatment is necessary; and (6) failing to ensure that non-jail medical professionals are provided with an inmate's jail medical records to ensure all important information is relayed to the non-jail medical professionals.

**71.** Defendant Wellpath has long been aware that failing to provide adequate and timely medical treatment to inmates experiencing serious and life-threatening medical needs is unconstitutional.

**72.** As a direct and proximate cause of these acts and omissions, Jacob Adejola experienced severe pain and suffering and ultimately death, and his estate incurred funeral and burial expenses.

WHEREFORE, Plaintiff prays for judgment against Defendant Wellpath and for an award of compensatory damages, punitive damages, attorneys' fees, costs, and any other relief the Court deems just and appropriate.

**Count IV**
**740 ILCS 180/1 – Illinois Wrongful Death**
**All Defendants**

73. Plaintiff incorporates all paragraphs of this Complaint as though fully set forth herein.

74. As more fully described above, Defendants owed Jacob Adejole the duty to refrain from willful and wanton acts or omissions that could cause him suffering or death.

75. As more fully descrived above, Defendants breached their duty of care to Jacob Adejola by willfully and wantonly committing one, more, or all of the following acts or omissions: ignoring the serious medical needs of Jacob Adejola; failing to bring Jacob Adejola's medical condition to the attention of medical personnel so he could be properly treated; failing to provide timely access to medical treatment for a serious condition of which they were aware; failing to monitor Jacob Adejola sufficiently for the foreseeable risk of heart problems; failing to provide all relevant medical information to St. Joseph's medical professionals; and/or otherwise acting willfully and wantonly towards Jacob Adejola, in disregard for his medical needs.

76. As a direct and proximate result of one or more of the foregoing willful and wanton acts and/or omissions of Defendants, Jacob Adejola died on May 4, 2019.

77. Jacob Adejola was survived by his wife and two children; his next of kin under Illinois law.

78. Defendants Will County, Will County Sheriff, and Wellpath are sued in this count of the complaint under the doctrine of *respondeat superior* as these three defendants are responsible for their employees' acts or omissions as the same were performed while the employees were acting within the scope of their employment.

**79.** As a result of the wrongful death of Jacob Adejola, his family has suffered and will continue to suffer profound grief, as well as the loss of support, society, and comfort in the future.

WHEREFORE, Plaintiff prays for a judgment against Defendants, jointly and severally, in a fair and just amount to compensate Jacob Adejola's family for the damages they have suffered due to the loss of Jacob Adejola, and any other relief the Court deems just and appropriate.

### JURY DEMAND

Plaintiff demands a trial by jury.

> Respectfully submitted,
> */s/ Shawn W. Barnett*
> Attorney No. 6312312

HALE & MONICO, LLC
53 West Jackson, Suite 337
Chicago, IL 60604
(312) 870-6905
Halemonico.com