046950/20908/MHW/REN/SAL

# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| GISLESE HALL-ADEJOLA, as Special Representative of the Estate of JACOB ADEJOLA, <br><br> Plaintiff, <br><br> v. <br><br> WILL COUNTY, WILL COUNTY SHERIFF'S DEPARTMENT, WILL COUNTY SHERIFF KELLEY, JOHN DISERA, EMMA PEREZ, CHRISTOPHER HAAS, JASON PROKOP, RANDY OWENS, JANETTE BISHOP-GREEN, MARIO CALDERON, UNKNOWN WILL COUNTY OFFICERS, LAURA KANE, UNKNOWN WELLPATH EMPLOYEES, AND WELLPATH, LLC, <br><br> Defendants. | Case Number 20 cv 2699 <br><br> Hon. Judge Robert M. Dow, Jr. |

### WELLPATH, LLC'S MOTION TO DISMISS
### COUNT IV OF PLAINTIFF'S COMPLAINT

Defendant WELLPATH, LLC, by and through its attorneys of CASSIDAY SCHADE LLP, moves under Fed. R. Civ. P. 12(b)(6) to dismiss Count IV of Plaintiff's Complaint at Law for failure to comply with 735 ILCS 5/2-622. In support, Defendant WELLPATH, LLC, states as follows:

### I.     Introduction and Background

This case arises from a claim by the Plaintiff that Jacob Adejola ("Decedent") did not receive adequate medical care at the Will County Adult Detention Facility ("Will County Jail"). (Doc. #1 "Complaint"). The Plaintiff names as Defendants: Will County, Will County Sheriff's Department, Will County Sheriff Kelley, John Disera, Emma Perez, Christopher Haas, Jason Prokop, Randy Owens, Janette Bishop-Green, Mario Calderon, Unknown Will County Officers,

Laura Kane, Unknown Wellpath Employees, and Wellpath, LLC (Doc. #1, pp. 6-11). Plaintiff alleges that Defendant Laura Kane and Unknown Wellpath Employees ("Medical Defendants") were responsible for various medical duties, including "assessment of the need for medical care." (Doc. #1, p. 10).

Plaintiff's Complaint brings four counts: Count I is a 42 U.S. Code §•1983 claim against "individual defendants," Count II is a *Monell* claim against Defendant Kelley, Count III is a *Monell* claim against Defendant Wellpath, LLC, and Count IV is a wrongful death claim brought against "all defendants." (*See* Doc. #1). This motion is brought seeking dismissal of Count IV.

In her Complaint, the Plaintiff alleges that Decedent was detained at the Will County Jail on March 18, 2019. (Doc. #1, p. 15). Plaintiff alleges that on March 28, 2019, Decedent was transferred to the medical division of the Will County Jail due to complaints of feeling lightheaded. (Doc. #1, p. 16). Plaintiff further alleges that on April 12, 2019, Decedent was evaluated by defendants, including Defendant Laura Kane, in response to complaints that Decedent was having difficulty breathing and pain in his chest. (Doc. #1, p. 20). Plaintiff alleges that as a result of this evaluation, Defendant Kane "determined" that Decedent did not need to see a doctor. (Doc. #1, p. 16). Plaintiff alleges that Defendant Kane's evaluation that Decedent did not need to see a doctor was an "obvious risk that departed radically from accepted professional judgment, practice, or standards." (Doc. #1, p. 22).

Plaintiff alleges that difficulty breathing and chest pains are objectively serious medical conditions, and that the need for treatment is obvious "even to a layperson" (Doc. #1, p. 23). Nevertheless, Plaintiff admits Decedent survived without incident until "April 23" (presumably 2019), whereupon Decedent was sent to St. Joseph Hospital due to an "altered mental status." (Doc. #1, p. 28). Plaintiff admits that Decedent was evaluated at St. Joseph Hospital and was returned to

2

the Will County Jail by St. Joseph Hospital the same day. (Doc. #1, pp. 28, 32). Plaintiff admits that the Decedent did not inform the St. Joseph Hospital staff of any difficulties breathing or chest pain. (Doc. #1, p. 31).

Plaintiff alleges that both between April 12, 2019, and "April 23," as well as for an unidentified time period after Decedent's return from St. Joseph Hospital, Decedent was documented as having difficulty eating, but does not allege that Decedent's difficulty eating was related to his difficulty breathing or chest pain. (*See* Doc. #1, p. 27). Plaintiff admits that medical staff at Will County Jail were aware of Decedent's difficulty eating, and in fact assisted Decedent with eating when necessary both before and after Decedent's visit to St. Joseph Hospital. (Doc. #1, pp. 27, 37).

## II. Motion to Dismiss Standard

In ruling on a Rule 12(b)(6) motion, the court must dismiss the complaint if the allegations do not state a plausible claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 622 (2009). "The fact that the allegations undergirding a plaintiff's claim could be true is no longer enough to save it." *Atkins v. City of Chicago*, 631 F.3d 823, 831 (7th Cir. 2011). The Plaintiff's allegations must reasonably put forth that she has a right to relief by raising that possibility above a "speculative level." *EEOC v. Concentra Health Servs*, 496 F.3d 773, 776 (7th Cir. 2007). If the allegations do not rise above this level, the Plaintiff pleads herself out of court. Accordingly, the Plaintiff's claims against this Defendant are not plausible and should be dismissed.

Further, the purpose of a motion to dismiss is not to determine whether a plaintiff will ultimately succeed on her claims, but whether the complaint sufficiently asserts facts which, when accepted as true, state a valid and plausible claim for relief. *Ashcroft v. Iqbal*, 556 US 662, 678 (2009). Under the notice pleading standard of Federal Rule of Civil Procedure 8(a)(2), a complaint

must present more than labels, conclusions, or a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must at least "plausibly suggest that the plaintiff has a right to relief, raising the possibility above a 'speculative level.'" *E.E.O.C. v. Concerntra Health Services, Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007).

### III. Argument in Support of Dismissal

A. *The Plaintiff Failed to Attach a Report to Her Complaint as Required by 735 ILCS 5/2-622*

Section 2-622 of the Illinois Code applies "to any action … in which the plaintiff seeks damages for injuries or death by reason of medical, hospital or other healing art malpractice." 735 ILCS 5/2-622. The term "'medical, hospital or other healing art practice' must be construed broadly." *Jackson v. Chicago Classic Janitorial and Cleaning Service, Inc.,* 355 Ill. App. 3d 906, 823 N.E.2d 1055, 1058, 291 Ill. Dec. 469 (Ill. App. 2005)(leave to appeal denied, 215 Ill. 2d 598, 833 N.E.2d 3, 295 Ill. Dec. 521 (Ill. May 25, 2005)(citations omitted). Section 2-622's requirements are state substantive law applied in applicable diversity cases pursuant to the well-known doctrine famously established in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). *See Hahn v. Walsh*, 762 F.3d 617, 629-33, 2014 U.S. App; *Ortiz v. United States*, No. 13 C 7626, 2014 U.S. Dist. LEXIS 20270, at *7 (N.D. Ill. Feb. 19, 2014) (citing Hon. Judge Dow's "sound reasoning" in *Warren v. Sheriff of Cook County Thomas Dart*, No. 09-cv-3512, 2010 U.S. Dist. LEXIS 124671, at *36 (N.D. Ill. Nov. 24, 2010)). It is uncontested that the allegations that gave rise to Plaintiff's complaint occurred entirely in the state of Illinois. (*See* Doc. #1).

"The phrase 'healing art' includes 'an entire branch of learning dealing with the restoration of physical or mental health.'" *Id.* at 1059 (quoting *Lyon v. Hasbro Industries, Inc.,* 156 Ill. App. 3d 649, 509 N.E.2d 702, 1987 Ill. App. LEXIS 2616, 109 Ill. Dec. 41) Malpractice is defined as "[f]ailure of one rendering professional services to exercise that degree of skill and learning

4

commonly applied under all the circumstances in the community by the average prudent member in of the profession with the result of injury to the recipient of those services." *Id.* at 1059 (quoting Black's Law Dictionary 959 (6th ed. 1990)). Further, "'[m]alpractice' is defined as incorrect or negligent treatment of the patient by a person responsible for his health care." *Id.* (citing Taber's Cyclopedic Medical Directory 1001 (15th ed. 1985). "It is also defined as a dereliction from a professional duty or a failure to exercise an adequate degree of care in rendering service." *Id.* (citing Webster's Ninth New Collegiate Dictionary 721 (1986); *Lyon,* 156 Ill. App. 3d 649, 509 N.E.2d 702, 109 Ill. Dec. 41)).

Nowhere in Count IV of her Complaint does Plaintiff allege healing art malpractice. In fact, Plaintiff seemingly seeks to avoid bringing Count IV as a malpractice by lumping medical personnel together with the other non-medical defendants in one wrongful death count and alleging that "difficulty breathing and chest pains is an obviously serious medical condition that [*sic*] a need for treatment for those issues is obvious even to a layperson." (*See* Doc. #1 p. 23, 73-79). In doing so, Plaintiff apparently attempts to frame Count IV as an ordinary negligence claim. It is true that ordinary negligence claims do not require a report under Section 2-622. *Awalt v. Marketti*, 2012 U.S. Dist. LEXIS 49182, *10. However, Plaintiff cannot avoid Section 2-622's requirements by labeling a medical malpractice case a negligence case. The court in *Jackson* identified three factors for courts to use to determine whether an action is one for malpractice: (1) whether the standard of care involves procedures not within the grasp of the ordinary lay juror; (2) whether the activity is inherently one of medical judgment; and (3) the type of evidence that will be necessary to establish plaintiff's case. *Jackson*, 823 N.E.2d at 1058 at 1058.

All three *Jackson* factors decisively show that Plaintiff's complaint is malpractice, not ordinary negligence. The first factor concerns whether the standard of care involves procedures not

5

within the grasp of the ordinary lay juror. Plaintiff's allegations against medical defendants concern evaluating medical complaints and determining an appropriate course of action, including whether a referral to a doctor is necessary. (*See* Doc. # 1 pp. 73-79). Such standards of care are clearly beyond the grasp of a lay juror. The question is not merely whether someone who has difficulty breathing and chest pains requires treatment, as Plaintiff seems to suggest (*see* Doc. #1 p. 23). Plaintiff herself admits that Decedent received treatment in response to his complaints, in the form of an evaluation by a medical professional. (*see* Doc. #1 pp. 20). Plaintiff's allegations instead dispute what course of treatment was appropriate or necessary based on the totality of Decedent's condition, and whether the medical defendants' chosen course of treatment departed from professional judgment, practice, and standards.

The second *Jackson* factor, whether the activity is inherently one of medical judgment, again demonstrates that this action lies in malpractice, as Count IV of Plaintiff's complaint challenges the medical judgment of the medical defendants. Plaintiff admits that despite Decedent allegedly being detained for only forty-seven days, he was seen on numerous occasions by Will County Jail medical staff, and even sent to the hospital once. (*See* Doc. # 1). Plaintiff admits that decedent was transferred to the medical division when he complained of feeling lightheaded, and Plaintiff admits that Decedent was evaluated by Defendant Kane when he complained of having difficulty breathing and chest pains. (*See* Doc. # 1 pp. 17, 20). Plaintiff disagrees with Defendant Kane's exercise of her medical judgment not to refer Decedent to a doctor. Plaintiff admits that Decedent was fed by nurses when he was unable to eat, yet still nakedly alleges that further medical action was necessary. (*See* Doc. # 1 pp. 27, 37, 73-79). Plaintiff admits that Decedent was allegedly sent to St. Joseph Hospital 11 days before Decedent stopped breathing and ultimately passed away, and that the St. Joseph Hospital staff sent Decedent back to the Will County Jail on the same day,

6

but also alleges that it was negligent not to accompany Decedent with medical staff or that Decedent's "altered mental status" meant that Decedent could not articulate his problems. (*See* Doc. # 1 pp. 28-30, 73-79). These are all activities concerning medical judgment.

The third and final *Jackson* factor, the type of evidence that will be necessary to establish plaintiff's case, also weighs in favor of Plaintiff's Count IV sounding in malpractice. Plaintiff seemingly tries to obfuscate the issue by alleging that a "difficulty breathing and chest pains is an obviously serious medical condition that [*sic*] a need for treatment for those issues is obvious even to a layperson." (Doc. #1 p. 23). This misstates the issue. As discussed *supra*, it is undisputed that Decedent received *some* treatment in response to his complaints. At dispute is the objective reasonableness of the chosen course of treatment by medical defendants. In order to prevail, Plaintiff will likely (at minimum) need an expert witness to establish why medical defendants' course of treatment was not objectively reasonable under a medical standard of care. Furthermore, even if Plaintiff hypothetically argues that she intends to proceed without an expert witness, it does not save her. Courts have held that a plaintiff must comply with Section 2-622 even if plaintiff could theoretically prove his or her case at trial without an expert. *Lyon v. Hasbro Industries, Inc.* (1987), 156 Ill. App. 3d 649, 655, 509 N.E.2d 702, 707.

All three factors of the *Jackson* test confirm what should be readily apparent: Count IV of Plaintiff's Complaint against Defendants Laura Kane, unknown Wellpath employees, and Wellpath, LLC, is in reality a healing arts malpractice claim. Injury or death befalling a patient does not automatically retroactively transform a course of medical treatment into a valid legal cause of action. Section 2-622 was established for the express purpose of curbing meritless lawsuits brought against medical professionals at the pleading stage. *See Fox v. Gauto*, 2013 IL App (5th) 110327, ¶ 16, 995 N.E.2d 1026. Whether Plaintiff's lawsuit actually has merit is not currently at issue before

this Court; rather, it is Plaintiff's statutory duty to first present a report authored by a qualified health professional pursuant to Section 2-622 swearing that Plaintiff's healing arts malpractice claim is "reasonable and meritorious." *Id.* Plaintiff has failed to attach said report, and accordingly Count IV of her Complaint must be dismissed.

WHEREFORE, Defendant WELLPATH, LLC, prays that this Honorable Court dismiss Count IV of Plaintiff's Complaint without prejudice and order any further relief in Defendant's favor as this Honorable Court deems just and equitable.

    Respectfully submitted,

    CASSIDAY SCHADE LLP

By:  /s/Seth A. LaPidus
     One of the Attorneys for Defendant WELLPATH, LLC

Matthew H. Weller | 6278685
Ronald E. Neroda | 6297286
Seth A. LaPidus | 6324215
CASSIDAY SCHADE LLP
222 West Adams Street, Suite 2900
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 (Fax)
mweller@cassiday.com
rneroda@cassiday.com
slapidus@cassiday.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2020, I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

/s/Seth A. LaPidus

9508295