**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GISLESE HALL-ADEJOLA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 20-cv-02699 |
| | ) | |
| vs. | ) | |
| | ) | |
| WILL COUNTY, WILL COUNTY | ) | Judge Robert M. Dow, Jr. |
| SHERIFF'S DEPARTMENT, WILL | ) | |
| COUNTY SHERIFF KELLEY, JOHN | ) | |
| DISERA, EMMA PEREZ, CHRISTOPHER | ) | |
| HAAS, RANDY OWENS, JANETTE | ) | |
| BISHOP-GREEN, MARIO CALDERON, | ) | |
| UNKNOWN WILL COUNTY OFFICERS, | ) | |
| LAURA KANE, UNKNOWN WELLPATH | ) | |
| EMPLOYEES, WELLPATH LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**COUNTY DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT**

Defendants Will County, Will County Sheriff's Department, Sheriff Mike Kelley, John Disera, Emma Perez, Christopher Haas, Randy Owens, Janette Bishop-Green, and Mario Calderon (collectively, the "County Defendants"), by their attorneys, Julie M. Koerner and Bhairav Radia, submit the following answer and affirmative defenses to plaintiff's complaint (Doc. #1):

INTRODUCTION

1.      On March 18, 2019, Jacob Adejola was booked into the Will County Jail to serve a 180-day sentence for driving with a revoked or suspended license. Due to the inadequate medical care and inhumane treatment, Jacob's sentence ended up being one of death as he lasted only 47 days in the custody of the Will County Jail before he

tragically died.

**ANSWER:** **The County Defendants admit that on March 18, 2019, Jacob Adejola was booked into the Will County Jail to serve a 180-day sentence for aggravated driving while license revoked, a class 4 felony; and admit that Adejola died on May 4, 2019. The County Defendants deny the remaining allegations in paragraph 1.**

2.      Jacob left behind a loving family who still have questions over how a generally healthy man can be taken into custody and die less than two months later.

**ANSWER:** **The County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 2.**

3.      Plaintiff brings this lawsuit not only to get answers as to how and why Jacob's life was cut short but to bring to light the constitutionally deficient medical treatment provided to inmates at the Will County Jail.

**ANSWER:** **The County Defendants deny that they caused Jacob's death. The County Defendants deny that they provide or provided constitutionally deficient medical treatment to inmates in Will County Jail.**

PARTIES

4.      Plaintiff Gislese Hall-Adejola is the surviving spouse of Jacob Adejola.

**ANSWER:** **The County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 4.**

5.      Jacob Adejola was a post-trial detainee at the Will County Jail at the time of his death.

**ANSWER:** **The County Defendants deny that Jacob Adejola was a "post-trial**

**detainee" in the Will County Jail at the time of his death. The County Defendants state that Jacob Adejola was a convicted and sentenced prisoner at the time of his death.**

6.    Defendant Mike Kelley is the elected Sheriff of Will County, whose office is responsible for the oversight of the Will County Jail. Defendant Kelley is sued in his official capacity.

**ANSWER:    Admit.**

7.    Defendants Will County Officers John Disera, Emma Perez, Christopher Haas, Jason Prokop, Randy Owens, Janette Bishop-Green, and Mario Calderon, and Unknown Will County Officers (collectively "Defendant Correctional  Officers") are sued in their individual capacities. During the relevant time, Defendant Correctional Officers acted within the scope of their employment and/or agency with Defendant Will County Sheriff's Department and under color of law.

**ANSWER:    The County Defendants admit the allegations in paragraph 7 pertaining to the individually named defendant officers John Disera, Emma Perez, Christopher Haas, Jason Prokop, Randy Owens, Janette Bishop-Green, and Mario Calderon. The County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations pertaining to Unknown Will County Officers in paragraph 7.**

8.    Defendant Will County Sheriff's Department was, during the relevant time, the employer of Defendant Correctional Officers. Defendant Will County Sheriff's Department is named as a party pursuant to the legal theory of *Respondeat Superior*.

**ANSWER:** The County Defendants admit that the Will County Sheriff's Office – incorrectly named as the Will County Sheriff's Department in the caption and complaint (Doc. 1) - was at all relevant times the employers of the individually named defendant officers John Disera, Emma Perez, Christopher Haas, Jason Prokop, Randy Owens, Janette Bishop-Green, and Mario Calderon. The County Defendants admit that the Will County Sheriff's Office, and not the incorrectly named Will County Sheriff's Department is named as a party pursuant to the theory of respondeat superior, but deny that it is liable under that theory. The County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations pertaining to unknown Will County officers in paragraph 8.

9. Defendant Will County is a municipal corporation organized, existing, and doing business under the laws of the State of Illinois. Defendant Will County is named as a party pursuant to the indemnification requirements of 745 ILCS 10/9-102.

**ANSWER:** The County Defendants deny that defendant Will County is a "municipal corporation" that "[does] business." The County Defendants admit that Will County is a unit of local government and admit the remaining allegations in paragraph 9, but deny that there is any basis of liability under the indemnification requirement or theory.

10. Defendants Laura Kane and Unknown Wellpath Employees were responsible for the day-to-day medical care of inmates at the Will County Jail. This responsibility included, but was not limited to, the assessment of need for medical care, writing

reports on an inmate's medical issues, inquiring of the inmates about their health and medications they had been prescribed, making requests for follow-up medical care for inmates, and keeping the correctional staff and treating medical professionals informed of any medical problems an inmate has. During the relevant time, Defendants Kane and Unknown Wellpath Employees were employed by Defendant Wellpath and acted within the scope of their employment and/or agency with Defendant Wellpath and under color of law. These defendants are sued in their individual capacities.

**ANSWER:** **The County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations that during the relevant time, Defendants Kane and unknown Wellpath employees were employed by Defendant Wellpath and acted within the scope of their employment and/or agency with Defendant Wellpath and under color of law. The County Defendants admit, on information and belief, the remaining allegations in paragraph 10.**

11.    Defendant Wellpath LLC is a corporation organized under the laws of Delaware and does business within the State of Illinois. During the relevant time, Defendant Wellpath had a contract with Will County, Illinois and the Will County Sheriff's Department to provide medical care to inmates at the Will County Jail. During the relevant time, Defendant Wellpath was the employer of Defendants Kane and Unknown Wellpath Employees.

**ANSWER:** **The County Defendants admit on information and belief that defendant Wellpath LLC is a corporation doing business within the State of Illinois, which during the relevant time had a contract with Will County, Illinois, and the**

**Will County Sheriff's Office (not Department) to provide medical care to inmates in the Will County Jail. The County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 11.**

## JURISDICTION

12.     This action arises under the Constitution of the United States, under the laws of the United States, and under the laws of the State of Illinois.

**<u>ANSWER</u>:     Admit.**

13.     The jurisdiction of this Court is invoked under the provisions of 28 U.S.C. §§ 1331 and 1343. Plaintiff also invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367.

**<u>ANSWER</u>:     The County Defendants admit this Court has jurisdiction over this suit.**

14.     Venue is proper in the United States District Court for the Northern District of Illinois, Eastern Division, under 28 U.S.C. § 1391(b)(.2) as the events complained of occurred within this district.

**<u>ANSWER</u>:     The County Defendants admit venue is proper.**

## FACTS

15.     On or about March 18, 2019, Jacob Adejola was booked into the Will County Jail to serve a 180-day sentence for driving with a revoked or suspended license.

**<u>ANSWER</u>:     The County Defendants admit that on or about March 18, 2019, Jacob Adejola was booked into the Will County Jail to serve a 180-day sentence for aggravated driving while license revoked.**

16.     When Jacob Adejola was booking into the Will County Jail on March 18, he was five foot seven inches tall and weighed 188 pounds. Other than minimal difficulty walking up stairs due to his age, Jacob Adejola was in good health.

**ANSWER:     The County Defendants admit, on information and belief, that when Jacob Adejola was booking into the Will County Jail on March 18, 2019, he was five foot seven inches tall; but deny, on information and belief, that he weighed 188 pounds that day. The County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 16.**

17.     On March 28, 2019, Jacob Adejola complained of feeling light headed. He was transferred to the medical division of the Will County Jail.

**ANSWER:     The County Defendants admit, on information and belief, the allegations in paragraph 17.**

18.     On April 12, 2019, Jacob Adejola complained to correctional officers that he was having difficult time breathing and that he had pain in his chest.

**ANSWER:     The County Defendants admit that on April 12, 2019, Jacob Adejola stated from his cell in the medical unit that he was having difficulty breathing and that he had pain in the right side of his chest.**

19.     Defendants Disera, Perez, Haas, Prokop, Owens, Bishop-Green, and Calderon responded, along with Defendant Kane.

**ANSWER:     The County Defendants admit that at various points in time during the emergency response on April 12, 2019, Defendants Disera, Perez, Haas, Prokop, Owens, Bishop-Green, and Calderon responded, along with Defendant Kane**

**responded.**

20.     Defendant Kane, upon information and belief, briefly evaluated Jacob Adejola and unilaterally determined that Jacob did not need to see a doctor for his breathing problems and the pain in his chest.

**ANSWER:     The County Defendants admit, on information and belief, that defendant Kane evaluated Jacob Adejola and determined that Jacob could remain in the cell he was then housed in inside the medical unit. The County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 20.**

21**.**     Jacob Adejola's inability to breathe without difficulty and the pain in his chest were an objectively serious medical condition.

**ANSWER:     The County Defendants deny the allegations in paragraph 21.**

22.     Difficulty breathing with chest pain are symptoms commonly associated with heart problems. Defendant Kane's decision to ignore these symptoms and, instead, to deny Jacob Adejola the opportunity to be evaluated by a doctor shows that Defendant Kane was deliberately and subjectively indifferent to the Jacob Adejola's serious medical needs. The refusal to have Jacob Adejola evaluated for potential heart problems-or any medical condition - was an. obvious risk that departed radically from accepted professional judgment, practice, or standards.

**ANSWER:     The County Defendants deny the allegations in paragraph 22.**

23.     Further, difficulty breathing and chest pains is an obviously serious medical condition that a need for treatment for those issues is obvious even to a layperson.

**ANSWER:** **The County Defendants deny the allegations in paragraph 23.**

24.     Defendants Disera, Perez, Haas, Prokop, Owens, Bishop-Green, and Calderon knew Jacob Adejola was having difficulty breathing and chest pains and were informed by Defendant Kane that no medical treatment was necessary.

**ANSWER:** **The County Defendants deny the allegations in paragraph 24.**

25.     The risks associated with ignoring chest pains and difficulty breathing are obvious; a reasonable person would not have disregarded providing Jacob Adejola with any medical treatment.

**ANSWER:** **The County Defendants deny the allegations in paragraph 25.**

26.     Despite having difficulty breathing and chest pain Jacob Adejola was not evaluated by a doctor.

**ANSWER:** **The County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 26.**

27.     Following the April 12 complaints of chest pains and difficulty breathing, Jacob Adejola was documented as having difficulty eating - sometimes only being able to eat with the assistance of a nurse. Additionally, Jacob Adejola made complaints of weakness.

**ANSWER:** **The County Defendants admit, on information and belief, that medical staff documented that Adejola sometimes had appetite loss and showed signs of weakness in the week following April 12, 2019. The County Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 27.**

28.    On April 23, Jacob Adejola was documented as having an "altered mental status." He was finally sent to St. Joseph's Hospital but was returned the same day.

**ANSWER:    The County Defendants admit the allegations in paragraph 28.**

29.    Upon information and belief, there was a lack of policy in effect that would allow for the dissemination of important medical information to be relayed from the medical professionals at the Will County Jail to the medical professionals at St. Joseph's Hospital and other medical facilities.

**ANSWER:    The County Defendants deny the allegations in paragraph 29.**

30.    In this case, the only information relayed to the St. Joseph's Hospital professionals was relayed by Jacob Adejola- who was suffering from altered mental status- and a correctional officer, who is not trained in medicine. Upon information and belief, no paperwork completed by any medical professionals documenting Jacob Adejola's medical issues were provided to the St. Joseph's medical team.

**ANSWER:    The County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 30.**

31.    Upon information  and belief, the issues of which Jacob Adejola had complained to Defendants of previously - the chest pain and difficulty breathing - were not relayed by Defendants to the hospital staff at St. Joseph's; this prevented the St. Joseph's medical staff from being able to accurately and completely evaluated Jacob Adejola.

**ANSWER:    The County Defendants deny the allegations in paragraph 31.**

32.    On April 23, Jacob Adejola's weight was calculated by the medical professionals at St. Joseph's hospital to be 160.6 pounds.

**ANSWER:** **The County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 32.**

33.     Jacob had lost 28 pounds in the 36 days he had been in custody at the Will County Jail.

**ANSWER:** **The County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 33.**

34.     Part of Jacob's discharge instructions were that he was to be returned to the emergency room if his symptoms -including an inability to drink and eat or confusion, weakness, or vomiting - worsened.

**ANSWER:** **The County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 34.**

35.     While Jacob Adejola was at the hospital, correctional officers inspected his personal belongings. A significant amount of uneaten and partially eaten food was discovered in his private bin.

**ANSWER:** **The County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 35.**

36.     Upon information and belief, the nursing staff were informed of the hoarded/uneaten food.

**ANSWER:** **The County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 36.**

37.     Following his return to the Will County Jail, Jacob Adejola continued to have difficulty eating and needed assistance from unknown nurses at times.

**ANSWER:** **The County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 37.**

38.     On May 3, Jacob Adejola was sent to St. Joseph's Hospital.

**ANSWER:** **Admit.**

39.     Upon information and belief, Jacob Adejola had complained to correctional officers of a shortness of breath and then stopped breathing.

**ANSWER:** **The County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 39.**

40.     On May 4, Jacob Adejola passed away.

**ANSWER:** **Admit.**

41.     During his time in custody, Jacob Adejola's health deteriorated from having no difficulty walking to needing the assistance of a walker.

**ANSWER:** **The County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 41.**

42.     The complaints of difficulty breathing: chest pains, and inability to eat were serious medical issues for which Jacob Adejola received inadequate medical treatment. No minimally competent medical professional would have failed to send Jacob Adejola for medical treatment under these circumstances.

**ANSWER:** **The County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 42.**

43.     During his time in custody, upon information and belief, Jacob Adejola's serious medical needs were observed and/or brought to the attention of Unknown Will County

Officers and Unknown Wellpath Employees, who similarly failed to provide adequate medical care and acted objectively unreasonable and/or deliberately indifferent to Jacob Adejola's serious medical needs.

**ANSWER:** **The County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 43.**

CLAIMS

**COUNT I**
**42 U.S.C. § 1983**
**Individual Defendants**

44.     Plaintiff incorporates all paragraphs of this Complaint as though folly set forth herein.

**ANSWER:** **The County Defendants restate their answers to all paragraphs of this Complaint for their answer to paragraph 44 as though fully set forth herein.**

45.     As more fully described above, Jacob Adejola had a serious medical need he suffered from difficulty breathing, chest pains, weakness, and an inability to eat.

**ANSWER:** **The County Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 45.**

46.     As more fully described above, Defendants' actions or omissions with respect to Jacob Adejola were objectively unreasonable and/or deliberately indifferent towards the serious medical needs of Jacob and to the substantial risk of harm to him.

**ANSWER:** **The County Defendants deny the allegations in paragraph 46.**

47.     Defendants failed to take appropriate steps to treat, supervise, and/or protect Jacob Adejola, which was objectively unreasonable and/or constituted deliberate

indifference towards his serious medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

**ANSWER:** **The County Defendants deny the allegations in paragraph**

48.     As a result of the objectively unreasonable and/or deliberately indifferent way in which Defendants treated Jacob Adejola they directly and proximately caused him to suffer physical and emotional pain and suffering before he died, diminished his chances of survival and/or caused the loss of his life, and caused his estate to incur financial and burial expenses.

**ANSWER:** **The County Defendants deny the allegations in paragraph 48.**

### COUNT II
### 42 U.S.C. § 1983
### *Monell* claim against Defendant Kelly

49.     Plaintiff incorporates all paragraphs of this Complaint as though fully set forth herein.

**ANSWER:** **The County Defendants restate their answers to all paragraphs of this Complaint for their answer to paragraph 49 above as though fully set forth herein.**

50.     A sheriff in any county in Illinois, such as Defendant Kelley, is always the final policy-making authority over a county jail's operation.

**ANSWER:** **The County Defendants admit that Defendant Sheriff Kelly, in his official capacity as the Sheriff of Will County, is the final policy-making authority for the Will County Jail.**

51.     As detailed above, Jacob Adejola's constitutional rights were violated when Individual Defendants were objectively unreasonable and/or deliberately indifferent

to Jacob Adejola's serious medical needs.

**ANSWER:** **The County Defendants deny the allegations in paragraph 51.**

52. The violations of Jacob Adejola's rights were caused in part by the customs, policies, and widespread practices of Defendant Kelley, which results in the failure to provide adequate medical care to inmates at the Will County Jail.

**ANSWER:** **The County Defendants deny the allegations in paragraph 52.**

53. These widespread or "de facto" policies include: (l) fostering an atmosphere where correctional officers and medical staff are permitted to disregard inmates who complaint that they are sick; (2) failing to supervise and monitor the work being done by Defendant Officers who are working at the jail to make sure that inmates with serious health issues are being cared for; (3) failing to provide adequate training to correctional officers so that they can recognize inmates who are struggling with health problems so that they can be promptly and sufficiently addressed; (4) failing to ensure that there is a prompt response to all inmate requests for medical attention; and (5) falling to enact and abide by a policy wherein all relevant medical information and records of an inmate are provided to non-jail medical professionals to ensure that the inmate receives sufficient medical treatment.

**ANSWER:** **The County Defendants deny the allegations in paragraph 53.**

54. Defendant Will County and Defendant Kelley have long been aware that failing to provide adequate and timely medical treatment to inmates experiencing serious and life-threatening medical needs is unconstitutional.

**ANSWER:** **The County Defendants deny that inmates in Will County Jail who**

**experience serious and life-threatening injuries are not provided adequate or timely medical treatment.**

55.     As a direct and proxin1ate cause of these acts and omissions, Jacob Adejola experienced severe pain and suffering and ultimately death, and his estate incurred funeral and burial expenses.

**ANSWER:     The County Defendants deny the allegations in paragraph 55.**

**COUNT III**
**42 U.S.C. § 1983**
*Monell* **claim against Defendant Wellpath**

56.     Plaintiff incorporates all paragraphs of this Complaint as though fully set forth herein.

**ANSWER:     The County Defendants do not answer Count III or the allegations contained therein because the claims and allegations in Count III are not directed against them.**

57.     Defendant Wellpath is one of the nation's largest for-profit providers of health care to correctional facilities. Upon information and belief, Defendant Wellpath has have contracts with over 500 facilities in 34 states.

**ANSWER:     The County Defendants do not answer Count III or the allegations contained therein because the claims and allegations in Count III are not directed against them.**

58.     Upon information and belief, Defendant Wellpath (formerly known as Correct Care Solutions) has engaged In a company-wide policy of "cost containment" and focuses on saving money at the expense of health care to incarcerated patients.

**ANSWER:**   The County Defendants do not answer Count III or the allegations contained therein because the claims and allegations in Count III are not directed against them.

59.     Defendant Wellpath's focus on saving costs at the expense of adequate healthcare was the focus of an investigative report by CNN. https://cnn.com/interactive/2019/06/us/jail-health-care-ccs-invs.

**ANSWER:**   The County Defendants do not answer Count III or the allegations contained therein because the claims and allegations in Count III are not directed against them.

60.     This investigation revealed that Defendant Wellpath "repeatedly relied on inexperienced workers, offered minimal training and understaffed facilities." Indeed, the report found that "doctors and  nurses have failed to diagnose and monitor life-threatening illnesses and chronic diseases."

**ANSWER:**   The County Defendants do not answer Count III or the allegations contained therein because the claims and allegations in Count III are not directed against them.

61.     Between 2014 and 2018, Defendant Wellpath was accused of contributing to more than 70 deaths of incarcerated Individuals in a slew of lawsuits relating to Defendant Wellpath's inadequate medical care.

**ANSWER:**   The County Defendants do not answer Count III or the allegations contained therein because the claims and allegations in Count III are not directed against them.

62.     Among the numerous problems with Defendant Wellpath's care, according to the report, is a pattern of lower-level nurses making critical decisions.  Here, Defendant Kane -a nurse- made the determination that Jacob Adejola did not need medical treatment despite his complaints of chest pain and a shortness of breath.

**ANSWER:     The County Defendants do not answer Count III or the allegations contained therein because the claims and allegations in Count III are not directed against them.**

63.     In December 2018, he United States Department of Justice completed an investigation into the Hampton Roads Regional Tail in Virginia.

**ANSWER:     The County Defendants do not answer Count III or the allegations contained therein because the claims and allegations in Count III are not directed against them.**

64.     Defendant Wellpath is responsible for the medical treatment of inmates at Hampton Roads Regional Jail.

**ANSWER:     The County Defendants do not answer Count III or the allegations contained therein because the claims and allegations in Count III are not directed against them.**

65.     The DOJ found that there was reasonable cause to believe that the conditions at the jail violated both the Eighth and Fourteen Amendments to the Constitution through, among other deficiencies, its failure to provide adequate medical care to prisoners.

**ANSWER:     The County Defendants do not answer Count III or the allegations**

**contained therein because the claims and allegations in Count III are not directed against them.**

66.     Defendant Wellpath has assumed, by virtue of the contract with Will County and the funds paid by Will County, responsibility of providing medical care to all inmates of the Will County Jail.

**ANSWER:    The County Defendants do not answer Count III or the allegations contained therein because the claims and allegations in Count III are not directed against them.**

67.     Defendant Wellpath was responsible the establishment and implementation of policies and procedures to make sure that inmates receive basic medical care consistent with what the United States Constitution and medical professionalism and ethics require.

**ANSWER:    The County Defendants do not answer Count III or the allegations contained therein because the claims and allegations in Count III are not directed against them.**

68.     As detained above, Jacob Adejola's constitutional rights were violated when Defendant Ra.ne and Unknown Wellpath Employees were objectively unreasonable and/or deliberately indifferent towards Jacob Adejola's serious medical needs.

**ANSWER:    The County Defendants do not answer Count III or the allegations contained therein because the claims and allegations in Count III are not directed against them.**

69.     The violation of Jacob Adejola's constitutional rights were caused in part by the

customs, policies, and widespread practices of Defendant Wellpath, which results in the failure to provide adequate medical care to the inmates who rely on the company fur medical care and treatment.

**ANSWER:** **The County Defendants do not answer Count III or the allegations contained therein because the claims and allegations in Count III are not directed against them.**

70. These widespread or "de facto" policies include: (1) failing to establish rules and practices to make sure that inmate information is promptly reviewed by a medical professional so that those inmates who need prompt care are helped; (2) failing to establish a system for Defendants Kane and Unknown Wellpath Employees to contact doctors who had been treating an inmate prior to incarceration so that adequate medical care could be continued and coordinated; (3) failing to ensure that inmate requests for medical attention are reviewed and acted upon in a prompt manner; (4) failing to properly train employees to ensure the inmate medical needs are evaluated and treated appropriately; (5) failing to ensure inmates are seen by non-jail medical professionals promptly when medical treatment is necessary; and (6) failing to ensure that non-jail medical professionals are provided with an inmate's jail medical records to ensure all important information is relayed to the non-jail medical professionals.

**ANSWER:** **The County Defendants do not answer Count III or the allegations contained therein because the claims and allegations in Count III are not directed against them.**

71. Defendant Wellpath has long been aware that failing to provide adequate and

timely medical treatment to inmates experiencing serious and life-threatening medical needs is unconstitutional.

**ANSWER:** **The County Defendants do not answer Count III or the allegations contained therein because the claims and allegations in Count III are not directed against them.**

72. As a direct and proximate cause of these acts and omissions, Jacob Adejola experienced severe pain and suffering and ultimately death, and his estate incurred funeral and burial expenses.

**ANSWER:** **The County Defendants do not answer Count III or the allegations contained therein because the claims and allegations in Count III are not directed against them.**

**COUNT IV**
**740 ILCS 180/1 – Illinois Wrongful Death**
**All Defendants**

73. Plaintiff incorporates all paragraphs of this Complaint as though fully set forth herein.

**ANSWER:** **The County Defendants restate their answers to all paragraphs of this Complaint for their answer to paragraph 73 as though fully set forth herein.**

74. As more fully described above, Defendants owed Jacob Adejola the duty to refrain from willful and wanton acts or omissions that could cause him suffering or death.

**ANSWER:** **The County Defendants admit only such duties as are imposed by the law and deny any other duties alleged.**

75. As more fully described above, Defendants breached their duty of care to Jacob Adejola by willfully and wantonly committing one, more, or all of the following acts or omissions ignoring the serious medical needs of Jacob Adejola; failing to bring Jacob Adejola's medical condition to the attention. of medical personnel so he could be properly treated; failing to provide timely access to medical treatment for a serious condition of which they were aware; failing to monitor Jacob Adejola sufficiently for the foreseeable risk of heart problems; failing to provide all relevant medical information to St. Joseph's medical professionals; and/or otherwise acting willfully and wantonly towards Jacob Adejola, in disregard for hill medical needs.

**ANSWER:** **The County Defendants deny the allegations in paragraph 75.**

76. As a direct and proximate result of one or more of the foregoing willful and wanton acts and/or omissions of Defendants, Jacob Adejola died on May 4, 2019.

**ANSWER:** **The County Defendants deny the allegations in paragraph 76.**

77. Jacob Adejola was survived by his wife and two children; his next of kin under Illinois law.

**ANSWER:**

78. Defendants Will County, Will County Sheriff, and Wellpath are sued in this count of the complaint under the doctrine of *respondeat superior* as these three defendants are responsible for their employees' acts or omissions as the same were performed while the employees were acting within the scope of their employment.

**ANSWER:** **The County Defendants admit that Will County and Will County Sheriff are sued in this count of the complaint under the doctrine of *respondeat***

*superior.* **The County Defendants admit that individual defendants John Disera, Emma Perez, Christopher Haas, Jason Prokop, Randy Owens, Janette Bishop-Green, and Mario Calderon acted within the scope of their employment at all relevant times. These individual defendants deny any wrongful or unlawful acts or omissions; so defendants Will County and Will County Sheriff deny liability on plaintiff's** *respondeat superior* **theory.**

79.     As a result of the wrongful death of Jacob Adejola, his family has suffered and will continue to suffer profound grief, as well as the loss of support, society, and comfort in the future.

<u>**ANSWER:**</u>     **The County Defendants deny the allegations in paragraph 79.**

AFFIRMATIVE DEFENSES

A.     **Affirmative defenses to federal law claims**

1.     Individual defendants John Disera, Emma Perez, Christopher Haas, Jason Prokop, Randy Owens, Janette Bishop-Green, and Mario Calderon (collectively, "Defendant Officers") were, at the time of the alleged events in March-May 2019, corrections officers or supervisors employed in the Will County Jail who performed discretionary functions. At all times material to the allegations in plaintiff's complaint, a reasonable corrections officer or sergeant objectively viewing the facts and circumstances that Defendant Officers faced could have believed his or her actions to be lawful, in light of clearly established law and the information he or she possessed.  In other words, Defendant Officers did not knowingly violate clearly established constitutional rights of which a reasonable person would have known.  Defendant

Officers are thus entitled to qualified immunity as a matter of law on plaintiff's federal constitutional claims brought against them in their individual capacities.

2.      Defendant Officers are not medical providers and do not provide medical advice, care, or treatment to inmates at the Will County Jail. Consequently, Defendant Officers were entitled to and did rely on the professional judgment of trained medical providers or medical staff who examined or treated Jacob Adejola during his detention in the Jail in 2019.

3.      Under 42 U.S.C. § 1983, punitive damages cannot be awarded against defendant Will County, or against defendant Mike Kelley in his official capacity as Will County Sheriff.

**B.      Affirmative defenses to state law claims**

I.      <u>Immunities under the Tort Immunity Act</u>

Will County (the "County") and Will County Sheriff Mike Kelley, in his official capacity (the "Sheriff"), are local public entities. Plaintiff alleges that individual defendant-officers John Disera, Emma Perez, Christopher Haas, Jason Prokop, Randy Owens, Janette Bishop-Green, and Mario Calderon ("Defendant Officers") and unknown Will County Officers ("Unknown Officers") were public employees who acted within the scope of their employment at all relevant times during Jacob Adejola's detention in the Will County Jail in 2019. Accordingly, the County, Sheriff, and Defendant Officers are entitled to the following immunities under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1 et seq.

1.      Plaintiff alleges Adejola died as a result of the acts or omissions of, among

others, Defendant Officers and Unknown Officers employed by the County or Sheriff. The County and Sheriff are not liable for death or injury resulting from an act or omission of any officer or employee of the County or Sheriff where the officer or employee is not liable. 745 ILCS 10/2-109.

2.      None of the Defendant Officers can be liable for any injury caused by the act or omission of another person. 745 ILCS 10/2-204.

3.      Defendant Sheriff Kelley, in his official capacity, serves in a position involving the exercise of discretion and determination of policy, including the determination of the policies and procedures of the operation of Will County Jail. As such, the Sheriff cannot be liable for death or injury resulting from any discretionary act or omission in determining Jail policies or procedures, as alleged, even if he abused his discretion. 745 ILCS 10/2-201.

4.      Defendant Officers, at all relevant times, worked in positions in the Will County Jail involving the exercise of discretion in executing certain Jail operations or in implementing certain Jail policies or procedures. As such, they, respectively, cannot be liable for death or injury resulting from their respective acts or omissions in exercising discretion in their tasks even if they abused their discretion. 745 ILCS 10/2-201.

5.      Plaintiff alleges the Sheriff failed to properly supervise, monitor, and train Defendant Officers and Unknown Officers working in the Will County Jail. Neither the County nor the Sheriff can be liable for the Sheriff's alleged failure to train, supervise, or monitor his corrections officers or employees. 745 ILCS 10/4-103.

6.      Plaintiff alleges Defendant Officers or Unknown Officers failed to

sufficiently monitor Adejola during his detention in the Will County Jail in 2019. The County, Sheriff, Defendant Officers, and Unknown Officers cannot be liable for an injury caused by the failure to supervise or monitor Adejola during his detention in the Jail. 745 ILCS 10/4-103.

7.     The County, Sheriff, and Defendant Officers cannot be liable for Adejola's death or injuries allegedly caused by the alleged failure of Defendant Officers to call a doctor for Adejola or send him to the hospital on April 12, 2019 after defendant Nurse Laura Kane evaluated Adejola, or at any other time alleged in the complaint. On information and belief, Nurse Kane and other medical providers and medical personnel employed by Wellpath were aware of Adejola's medical problems, and were providing care or treatment to him in the medical unit, where he was housed from March 28, 2019 to May 3, 2019.  Defendant Officers assumed that medical staff was addressing or treating Adejola's medical needs, including any serious medical need, and Defendant Officers relied upon the professional medical judgment of Nurse Kane and the other medical providers and medical personnel in this regard. Additionally, Defendant Officers did not know from their observation of all the relevant conditions and circumstances that Adejola needed to go to the hospital on April 12, 2019 on an emergent basis, or that Adejola was being denied access to medical providers or care for his medical needs in the Jail, or that Adejola's medical needs were being ignored by any medical providers or medical staff, or that Adejola was being mistreated by Nurse Kane or any other medical providers or medical staff. Consequently, Defendant Officers acted reasonably during the relevant time, and their conduct was not willful and wanton;

therefore they cannot be held liable. 745 ILCS 10/4-105.

8.     The County, Sheriff, and Defendant Officers cannot be liable for Adejola's death or injuries caused by the alleged failure of any Defendant Officers or Unknown Officers to make an adequate physical examination of Adejola for the purpose of determining whether he had a physical condition or was allegedly displaying symptoms of a serious medical need that would constitute a hazard to his health and safety in the Will County Jail. 745 ILCS 10/6-105.

9.     The County, Sheriff, and Defendant Officers cannot be liable for Adejola's death or injuries caused by the alleged failure of any Defendant Officers or Unknown Officers to recognize or diagnose Adejola's "serious medical needs." 745 ILCS 10/6-106.

10.     Plaintiff alleges Defendant Officers or Unknown Officers failed to provide all relevant medical information concerning Adejola to hospital staff. Defendant Officers cannot be liable for Mr. Erwin's death or any other injury caused by any negligent misrepresentation or provision of any information orally, in writing, or in electronic form on their respective part. 745 ILCS 10/2-210. And the County and Sheriff cannot be liable for any injury caused by any negligent misrepresentation or the provision of information, orally or in writing, by their employees. 745 ILCS 10/2-107. Finally, the County and Sheriff cannot be liable for any misrepresentation of its officers or employees, whether or not such misrepresentation is negligent or intentional. 745 ILCS 10/2-106.

11.     The County, Sheriff, and Defendant Officers cannot be liable for any failure to provide sufficient equipment, personnel, supervision, or facilities in the Weill

County Jail, or for the alleged failure to properly monitor Adejola during his detention in the Jail. 745 ILCS 10/4-103.

12.　　Neither the County nor the Sheriff is liable to pay punitive or exemplary damages in any state law claims brought against them directly or indirectly in this action. 745 ILCS 10/2-102.

II.　　Contributory fault

1.　　The County, Sheriff, and Defendant Officers deny any liability to plaintiff. In the alternative, if the County, Sheriff, Defendant Officers, or Unknown Officers are held liable, plaintiff's recovery should be reduced by Jacob Adejola's contributory fault.

2.　　At the times and places alleged in the complaint, Adejola owed a duty of ordinary care for his own health and welfare.

3.　　On information and belief, Adejola violated his duty of ordinary care by committing one or more of the following negligent acts or omissions:

> (a)　　failed to accurately report his symptoms and conditions to correctional officers and/or medical staff;
>
> (b)　　failed to fully and accurately report his medical history to correctional officers and/or medical staff;
>
> (c)　　failed to follow medical directives and orders given by his medical providers; and
>
> (d)　　failed to take medications or comply with medication regimens prescribed for him.

4.　　One or more of the foregoing acts, omissions or violations of Illinois law

was a proximate cause or the proximate cause of Adejola's injuries and death and plaintiff's claimed injuries.

5.       Illinois law provides that "In all actions on account of bodily injury or death …, based on negligence …, the plaintiff shall be barred from recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is more than 50% of the proximate cause of the injury or damage for which recovery is sought. The plaintiff shall not be barred from recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is not more than 50% of the proximate cause of the injury or damage for which recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of fault attributable to the plaintiff." 735 ILCS 5/2-1116.

6.       Under 735 ILCS 5/2-1116, plaintiff's recovery must be barred or reduced by Adejola's comparative fault.

For these reasons, the County, Sheriff, and Defendant Officers respectfully request that the Court enter an Order barring plaintiff's recovery if Adejola is found to be more than 50% at fault or reducing plaintiff's recovery by Adejola's comparative fault if such fault is 50% or less of the total combined fault, and award the County, Sheriff, and Defendant Officers their costs herein.

III.     Failure to mitigate damages

1.       At the times and places alleged in the complaint, Jacob Adejola had a duty to take reasonable measures to mitigate his damages. Despite this duty, Adejola failed to mitigate his damages in the following ways:

(a)    failed to accurately report his symptoms and conditions to correctional officers and/or medical staff;

(b)    failed to fully and accurately report his medical history to correctional officers and/or medical staff;

(c)    failed to follow medical directives and orders given by his medical providers; and

(d)    failed to take medications or comply with medication regimens prescribed for him.

2.    Plaintiff is not entitled to recover for any damages that could have been mitigated by Adejola by taking reasonable measures on his part.

For these reasons, the County, Sheriff, and Defendant Officers request that this Court enter judgment in bar of plaintiff's complaint, or in the alternative, deny plaintiff the elements of damages that Adejola could have been mitigated; award the County, Sheriff, and Defendant Officers attorneys' fees and costs at plaintiff's expense; and additional relief as the Court deems just.

## JURY DEMAND

The County Defendants request a jury trial.

Respectfully Submitted,

**WILL COUNTY, WILL COUNTY SHERIFF'S DEPARTMENT, SHERIFF MIKE KELLEY, JOHN DISERA, EMMA PEREZ, CHRISTOPHER HAAS, RANDY OWENS, JANETTE BISHOP-GREEN, and MARIO CALDERON,**

By:     <u>*s/Bhairav Radia*</u>                    
                    One of the County Defendants' Attorneys

Bhairav Radia, #6293600
Julie M. Koerner, #6204852
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone:  (847) 291-0200
Fax: (847) 291-9230
E-mail:  bradia@okgc.com
            jkoerner@okgc.com

| | | |
|---|---|---|
| GISLESE HALL-ADEJOLA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 20-cv-02699 |
| | ) | |
| vs. | ) | |
| | ) | |
| WILL COUNTY, WILL COUNTY | ) | Judge Robert M. Dow, Jr. |
| SHERIFF'S DEPARTMENT, WILL | ) | |
| COUNTY SHERIFF KELLEY, JOHN | ) | |
| DISERA, EMMA PEREZ, CHRISTOPHER | ) | |
| HAAS, RANDY OWENS, JANETTE | ) | |
| BISHOP-GREEN, MARIO CALDERON, | ) | |
| UNKNOWN WILL COUNTY OFFICERS, | ) | |
| LAURA KANE, UNKNOWN WELLPATH | ) | |
| EMPLOYEES, WELLPATH LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2020 I electronically filed *County Defendants' Answer to Plaintiff's Complaint* with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered CM/ECF participants.


By:    *s/Bhairav Radia*
           Bhairav Radia
           O'Halloran Kosoff Geitner & Cook, LLC
           650 Dundee Road, Suite 475
           Northbrook, Illinois 60062
           Telephone:  (847) 291-0200
           Fax: (847) 291-9230
           E-mail:  bradia@okgc.com