046950/20908/MHW/REN

# UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GISLESE HALL-ADEJOLA, as Special Representative of the Estate of JACOB ADEJOLA, <br><br> Plaintiff, <br><br> v. <br><br> WILL COUNTY, WILL COUNTY SHERIFF'S DEPARTMENT, WILL COUNTY SHERIFF KELLEY, JOHN DISERA, EMMA PEREZ, CHRISTOPHER HAAS, JASON PROKOP, RANDY OWENS, JANETTE BISHOP-GREEN, MARIO CALDERON, UNKNOWN WILL COUNTY OFFICERS, LAURA KANE, UNKNOWN WELLPATH EMPLOYEES, AND WELLPATH, LLC, <br><br> Defendants. | No. 20 cv 2699 <br><br> Hon. Robert M. Dow, Jr., District Judge <br><br> **JURY TRIAL DEMANDED** |

## WELLPATH'S ANSWER TO COMPLAINT

Defendant WELLPATH, by and through its attorneys of CASSIDAY SCHADE LLP, for its Answer to Plaintiff's Complaint, states as follows:

### INTRODUCTION

1. On March 18, 2019, Jacob Adejola was booked into the Will County Jail to serve a 180-day sentence for driving with a revoked or suspended license. Due to the inadequate medical care and inhumane treatment, Jacob's sentence ended up being one of death as he lasted only 47 days in the custody of the Will County Jail before he tragically died.

**ANSWER: Defendant admits only that on March 18, 2019, Jacob Adejola was booked into the Will County Jail to serve a 180-day sentence for aggravated driving with a revoked license, a class 4 felony, and that he died on May 4, 2019. Defendant denies the remaining allegations in paragraph 1.**

2. Jacob left behind a loving family who still have questions over how a generally healthy man can be taken into custody and die less than two months later.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2.**

3. Plaintiff brings this lawsuit not only to get answers as to how and why Jacob's life was cut short but to bring to light the constitutionally deficient medical treatment provided to inmates at the Will County Jail.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation concerning the Plaintiff's motivations in bringing this lawsuit and denies all remaining allegations in paragraph 3.**

## PARTIES

4. Plaintiff Gislese Hall-Adejola is the surviving spouse of Jacob Adejola.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4.**

5. Jacob Adejola was a post-trial detainee at the Will County Jail at the time of his death.

**ANSWER: Defendant denies the allegations in paragraph 5.**

6. Defendant Mike Kelley is the elected Sheriff of Will County, whose office is responsible for the oversight of the Will County Jail. Defendant Kelley is sued in his official capacity.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6.**

7. Defendants Will County Officers John Disera, Emma Perez, Christopher Haas, Jason Prokop, Randy Owens, Janette Bishop-Green, and Mario Calderon, and Unknown Will County Officers (collectively "Defendant Correctional Officers") are sued in their individual capacities. During the relevant time, Defendant Correctional Officers acted within the scope of

their employment and/or agency with Defendant Will County Sheriff's Department and under color of law.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7.**

8. Defendant Will County Sheriff's Department was, during the relevant time, the employer of Defendant Correctional Officers. Defendant Will County Sheriff's Department is named as a party pursuant to the legal theory of *Respondeat Superior*.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8.**

9. Defendant Will County is municipal corporation organized, existing, and doing business under the laws of the State of Illinois. Defendant Will County is named as a party pursuant to the indemnification requirements of 745 ILCS 10/9-102.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9.**

10. Defendants Laura Kane and Unknown Wellpath Employees were responsible for the day-to-day medical care of inmates at the Will County Jail. This responsibility included, but was not limited to, the assessment of need for medical care, writing reports on an inmate's medical issues, inquiring of the inmates about their health and medications they had been prescribed, making requests for follow-up medical care for inmates, and keeping the correctional staff and treating medical professionals informed of any medical problems an inmate has. During the relevant time, Defendants Kane and Unknown Wellpath Employees were employed by Defendant Wellpath and acted within the scope of their employment and/or agency with Defendant Wellpath and under color of law. These defendants are sued in their individual capacities.

**ANSWER: Defendant admits only that its employees at the Will County Jail had certain duties related to the day-to-day medical care of inmates at the Jail, and that some of the**

duties for certain employees may include the assessment of need for medical care, writing reports on an inmate's medical issues, inquiring of the inmates about their health and medications they had been prescribed, making requests for follow-up medical care for inmates, and keeping the correctional staff and treating medical professionals informed of any medical problems an inmate has. Defendant admits that Co-Defendant Laura Kane was employed by Wellpath and is sued in her individual capacity. Defendant denies that the Plaintiff has accurately alleged the particular responsibilities and duties of the various Wellpath employees at the Will county Jail and denies any remaining allegations in paragraph 10.

11. Defendant Wellpath LLC is a corporation organized under the laws of Delaware and does business within the State of Illinois. During the relevant time, Defendant Wellpath had a contact with Will County, Illinois and the Will County Sheriff's Department to provide medical care to inmates at the Will County Jail. During the relevant time, Defendant Wellpath was the employer of Defendants Kane and Unknown Wellpath Employees.

**ANSWER: Defendant admits only that Wellpath LLC is a corporation organized under the laws of Delaware and does business within the State of Illinois, and during the relevant time, Wellpath had a contract with Will County to provide certain medical care to inmates at the Will County Jail, and that Wellpath was the employer of Co-Defendant Laura Kane. Defendant denies that the Plaintiff has accurately or fully alleged the medical care to be provided under the contract and denies any remaining allegations in paragraph 11.**

## JURISDICTION

12. This action arises under the Constitutional of the United States, under the laws of the United States, and under the laws of the State of Illinois.

**ANSWER: Defendant admits only that the Plaintiff claims that this action arises under the Constitution of the United States, under the laws of the United States, and under the laws of the State of Illinois, but denies any claim made under the Constitution of the United States, under the laws of the United States, and under the laws of the State of Illinois.**

13. The jurisdiction of this Court is invoked under the provisions of 28 U.S.C. §§ 1331 and 1343. Plaintiff also invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367.

**ANSWER: Defendant does not dispute the jurisdiction of this Court.**

14. Venue is proper in the United States District Court for the Northern District of Illinois, Eastern Division, under 28 U.S.C. § 1391(b)(2) as the events complained of occurred within this district.

**ANSWER:    Defendant does not dispute venue in this matter.**

## FACTS

15. On or about March 18, 2019, Jacob Adejola was booked into the Will County Jail to serve a 180-day sentence for driving with a revoked or suspended license.

**ANSWER:    As already stated in response to paragraph 1, above, Defendant admits only that on March 18, 2019, Jacob Adejola was booked into the Will County Jail to serve a 180-day sentence for aggravated driving with a revoked license, a class 4 felony.**

16. When Jacob Adejola was booking into the Will County Jail on March 18, he was five foot seven inches tall and weighed 188 pounds. Other than minimal difficulty walking up stairs due to his age, Jacob Adejola was in good health.

**ANSWER:    Defendant admits only, on information and belief, that when Jacob Adejola was booking into the Will County Jail on March 18, 2019, he was five foot seven inches tall, but denies, on information and belief, that he weighed 188 pounds that day. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 16.**

17. On March 28, 2019, Jacob Adejola complained of feeling light headed. He was transferred to the medical division of the Will County Jail.

**ANSWER:    Admit.**

18. On April 12, 2019, Jacob Adejola complained to correctional officers that he was having a difficult time breathing and that he had pain in his chest.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 18.**

19. Defendants Disera, Perez, Haas, Prokop, Owens, Bishop-Green, and Calderon responded, along with Defendant Kane.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 19.**

20. Defendant Kane, upon information and belief, briefly evaluated Jacob Adejola and unilaterally determined that Jacob did not need to see a doctor for his breathing problems and the pain in his chest.

**ANSWER: Because there is no date of evaluation set forth in paragraph 20, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 20.**

21. Jacob Adejola's inability to breathe without difficulty and the pain in his chest were an objectively serious medical condition.

**ANSWER: Defendant denies the allegations in paragraph 21.**

22. Difficulty breathing with chest pain are symptoms commonly associated with heart problems. Defendant Kane's decision to ignore these symptoms and, instead, to deny Jacob Adejola the opportunity to be evaluated by a doctor shows that Defendant Kane was deliberately and subjectively indifferent to the Jacob Adejola's serious medical needs. The refusal to have Jacob Adejola evaluated for potential heart problems – or any medical condition – was an obvious risk that departed radically from accepted professional judgment, practice, or standards.

**ANSWER: Defendant denies the allegations in paragraph 22.**

23. Further, difficulty breathing and chest pains is an obviously serious medical condition that a need for treatment for those issues is obvious even to a layperson.

**ANSWER: Defendant denies the allegations in paragraph 23.**

24. Defendants Disera, Perez, Haas, Prokop, Owens, Bishop-Green, and Calderon knew Jacob Adejola was having difficulty breathing and chest pains and were informed by Defendant Kane that no medical treatment was necessary.

**ANSWER: Defendant denies the allegations in paragraph 24.**

25. The risks associated with ignoring chest pains and difficulty breathing are obvious; a reasonable person would not have disregarded providing Jacob Adejola with any medical treatment.

**ANSWER: Defendant denies the allegations in paragraph 25.**

26. Despite having difficulty breathing and chest pain, Jacob Adejola was not evaluated by a doctor.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 26.**

27. Following the April 12 complaints of chest pains and difficulty breathing, Jacob Adejola was documented as having difficulty eating – sometimes only being able to eat with the assistance of a nurse. Additionally, Jacob Adejola made complaints of weakness.

**ANSWER: Defendant admits only, on information and belief, that the medical records reference that Adejola sometimes had appetite loss and showed signs of weakness in the week following April 12, 2019. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 27.**

28. On April 23, Jacob Adejola was documented as having an "altered mental status." He was finally sent to St. Joseph's Hospital but was returned the same day.

**ANSWER: Defendant denies the characterization that the Decedent was "finally" sent to the hospital, but admits the remaining allegations in paragraph 28.**

29. Upon information and belief, there was a lack of policy in effect that would allow for the dissemination of important medical information to be relayed from the medical professionals at the Will County Jail to the medical professionals at St. Joseph's Hospital and other medical facilities.

**ANSWER: Defendant denies the allegations in paragraph 29.**

30. In this case, the only information relayed to the St. Joseph's Hospital professionals was relayed by Jacob Adejola – who was suffering from altered mental status – and

a correctional officer, who is not trained in medicine. Upon information and belief, no paperwork completed by any medical professionals documenting Jacob Adejola's medical issues were provided to the St. Joseph's medical team.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 30.**

31. Upon information and belief, the issues of which Jacob Adejola had complained to Defendants of previously – the chest pain and difficulty breathing – were not relayed by Defendants to the hospital staff at St. Joseph's; this prevented the St. Joseph's medical staff from being able to accurately and completely evaluated Jacob Adejola.

**ANSWER: Defendant denies the allegations in paragraph 31.**

32. On April 23, Jacob Adejola weight was calculated by the medical professionals at St. Joseph's hospital to be 160.6 pounds.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 32.**

33. Jacob had lost 28 pounds in the 36 days he had been in custody at the Will County Jail.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 33.**

34. Part of Jacob's discharge instructions were that he was to be returned to the emergency room if his symptoms – including an inability to drink and eat or confusion, weakness, or vomiting – worsened.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 34.**

35. While Jacob Adejola was at the hospital, correctional officers inspected his personal belongings. A significant amount of uneaten and partially eaten food was discovered in his private bin.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 35.**

36. Upon information and belief, the nursing staff were informed of the hoarded/uneaten food.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 36.**

37. Following his return to the Will County Jail, Jacob Adejola continued to have difficulty eating and needed assistance from unknown nurses at times.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 37.**

38. On May 3, Jacob Adejola was sent to St. Joseph's Hospital.

**ANSWER: Admit.**

39. Upon information and belief, Jacob Adejola had complained to correctional officers of a shortness of breath and then stopped breathing.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 39.**

40. On May 4, Jacob Adejola passed away.

**ANSWER: Admit.**

41. During his time in custody, Jacob Adejola's health deteriorated from having no difficulty walking to needing the assistance of a walker.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 41.**

42. The complaints of difficulty breathing, chest pains, and inability to eat were serious medical issues for which Jacob Adejola received inadequate medical treatment. No minimally competent medical professional would have failed to send Jacob Adejola for medical treatment under these circumstances.

**ANSWER:** Defendant denies the allegations in paragraph 42.

43. During his time in custody, upon information and belief, Jacob Adejola's serious medical needs were observed and/or brought to the attention of Unknown Will County Officers and Unknown Wellpath Employees, who similarly failed to provide adequate medical care and acted objectively unreasonable and/or deliberately indifferent to Jacob Adejola's serious medical needs.

**ANSWER:** Defendant denies the allegations in paragraph 43.

## CLAIMS

### COUNT I
### 42 U.S.C. § 1983
### Individual Defendants

*Count I of Plaintiff's Complaint is not directed at this answering Defendant. To the extent any allegation in Count I is deemed directed at this Defendant, Defendant denies each and every allegation therein.*

### COUNT II
### 42 U.S.C. § 1983
### *Monell* claim against Defendant Kelley

*Count II of Plaintiff's Complaint is not directed at this answering Defendant. To the extent any allegation in Count II is deemed directed at this Defendant, Defendant denies each and every allegation therein.*

### Count III
### 42 U.S.C. § 1983
### *Monell* claim against Defendant Wellpath

56. Plaintiff incorporates all paragraphs of this Complaint as though fully set forth herein.

**ANSWER: To the extent Plaintiff intends to incorporate all paragraphs of the Complaint as though fully set forth in paragraph 56, Defendant hereby restates and incorporates by reference its answers to all paragraphs of the Complaint as if fully set forth herein.**

57. Defendant Wellpath is one of the nation's largest for-profit providers of health care to correctional facilities. Upon information and belief, Defendant Wellpath has have contracts with over 500 facilities in 34 states.

**ANSWER: Defendant admits only that it is a for-profit provider of health care to correctional facilities and that it employs health care workings at various facilities throughout the United States. Defendant denies any remaining allegations in paragraph 57.**

58. Upon information and belief, Defendant Wellpath (formerly known as Correct Care Solutions) has engaged in a company-wide policy of "cost containment" and focuses on saving money at the expense of health care to incarcerated patients.

**ANSWER: Defendant denies the allegations in paragraph 58.**

59. Defendant Wellpath's focus on saving costs at the expense of adequate healthcare was the focus of an investigative report by CNN. https://www.cnn.com/interactive/2019/06/us/jail-health-care-ccs-invs/.

**ANSWER: Defendant denies the allegations in paragraph 59.**

60. This investigation revealed that Defendant Wellpath "repeatedly relied on inexperienced workers, offered minimal training and understaffed facilities." Indeed, the report found that "doctors and nurses have failed to diagnose and monitor life-threatening illnesses and chronic diseases."

**ANSWER: Defendant denies the allegations in paragraph 60.**

61. Between 2014 and 2018, Defendant Wellpath was accused of contributing to more than 70 deaths of incarcerated individuals in a slew of lawsuits relating to Defendant Wellpath's inadequate medical care.

**ANSWER: Defendant admits only that it has been named in lawsuits between 2014 and 2018, some of which have involved claims related to deaths of incarcerated individuals, but denies the characterization of such cases in paragraph 61 and denies any remaining allegations in paragraph 61.**

62. Among the numerous problems with Defendant Wellpath's care, according to the report, is a pattern of lower-level nurses making critical decisions. Here, Defendant Kane – a nurse – made the determination that Jacob Adejola did not need medical treatment despite his complaints of chest pain and a shortness of breath.

**ANSWER: Defendant denies the allegations in paragraph 62.**

63. In December 2018, the United States Department of Justice completed an investigation into the Hampton Roads Regional Jail in Virginia.

**ANSWER: Defendant objects to this allegation as wholly unrelated to any claim in this case and, therefore, denies and moves to strike paragraph 63 of Plaintiff's Complaint.**

64. Defendant Wellpath is responsible for the medical treatment of inmates at Hampton Roads Regional Jail.

**ANSWER: Defendant objects to this allegation as wholly unrelated to any claim in this case and, therefore, denies and moves to strike paragraph 64 of Plaintiff's Complaint.**

65. The DOJ found that there was reasonable cause to believe that the conditions at the jail violated both the Eighth and Fourteenth Amendments to the Constitution through, among other deficiencies, its failure to provide adequate medical care to prisoners.

**ANSWER: Defendant objects to this allegation as wholly unrelated to any claim in this case and, therefore, denies and moves to strike paragraph 65 of Plaintiff's Complaint.**

66. Defendant Wellpath has assumed, by virtue of the contract with Will County and the funds paid by Will County, responsibility of providing medical care to all inmates of the Will County Jail.

**ANSWER: Defendant admits only that it has a contract for the provision of certain healthcare services at the Will County Jail, but denies that paragraph 66 fully or accurately sets forth the responsibilities of Wellpath under the agreement and denies any remaining allegations in paragraph 66.**

67. Defendant Wellpath was responsible for the establishment and implementation of policies and procedures to make sure that inmates receive basic medical care consistent with what the United States Constitution and medical professionalism and ethics require.

**ANSWER:  Defendant denies the allegations in paragraph 67.**

68. As detained above, Jacob Adejola's constitutional rights were violated when Defendant Kane and Unknown Wellpath Employees were objectively unreasonable and/or deliberately indifferent towards Jacob Adejola's serious medical needs.

**ANSWER:  Defendant denies the allegations in paragraph 68.**

69. The violation of Jacob Adejola's constitutional rights were caused in part by the customs, policies, and widespread practices of Defendant Wellpath, which results in the failure to provide adequate medical care to the inmates who rely on the company for medical care and treatment.

**ANSWER:  Defendant denies the allegations in paragraph 69.**

70. These widespread or "de facto" policies include : (1) failing to establish rules and practices to make sure that inmate information is promptly reviewed by a medical professional so that those inmates who need prompt care are helped; (2) failing to establish a system for Defendants Kane and Unknown Wellpath Employees to contact doctors who had been treating an inmate prior to incarceration so that adequate medical care could be continued and coordinated; (3) failing to ensure that inmate requests for medical attention are reviewed and acted upon in a prompt manner; (4) failing to properly train employees to ensure the inmate medical needs are evaluated and treated appropriately; (5) failing to ensure inmates are seen by non-jail medical professionals promptly when medical treatment is necessary; and (6) failing to ensure that non-jail medical professionals are provided with an inmate's jail medical records to ensure all important information is relayed to the non-jail medical professionals.

**ANSWER:** Defendant denies the allegations in paragraph 70.

71. Defendant Wellpath has long been aware that failing to provide adequate and timely medical treatment to inmates experiencing serious and life-threatening medical needs is unconstitutional.

**ANSWER:** Defendant denies the allegations in paragraph 71.

72. As a direct and proximate cause of these acts and omissions, Jacob Adejola experienced severe pain and suffering and ultimately death, and his estate incurred funeral and burial expenses.

**ANSWER:** Defendant denies the allegations in paragraph 72.

WHEREFORE, Defendant WELLPATH prays that this Honorable Court dismiss Plaintiff's Complaint with prejudice with costs awarded to Defendant, and order any further relief in Defendant's favor as this Honorable Court deems just and equitable.

## COUNT IV
## 740 ILCS 180/1 – Illinois Wrongful Death
## All Defendants

*Count IV has been dismissed as directed against this Answering Defendant (See Doc. #30).*

## JURY DEMAND

**Defendant demands a trial by jury on all issues herein triable.**

## AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant WELLPATH, by its attorneys of CASSIDAY SCHADE LLP, for its Affirmative Defenses to Plaintiff's Complaint, hereby states as follows:

## FIRST AFFIRMATIVE DEFENSE – FAILURE TO STATE A CLAIM

1. Defendant WELLPATH affirmatively states that the Plaintiff's Complaint fails to state a claim upon which relief could be granted pursuant to 42 U.S.C. §1983.

2. To assert a claim for cruel and unusual punishment under the Fourteenth Amendment of the Constitution, the plaintiff must show that the treatment he received was unreasonable and amounted to deliberate indifference to a serious medical need.

3. A private corporation acting under the color of state law may be liable under §1983 if an official policy or custom of the corporation resulted in the alleged constitutional deprivation. *Monell v. Dep't of Social Svcs. of City of New York*, 436 U.S. 658, 690–91 (1978).

4. To state a viable §1983 claim against a private corporation acting under the color of state law, a plaintiff must prove that his injury was caused by: (1) an express policy; (2) a widespread practice constituting a "custom or usage"; or (3) the act of a person with final policymaking authority at the corporation. *Houskins v. Sheahan*, 549 F.3d 480, 493 (7th Cir. 2008). Plaintiff's allegations regarding the policies and customs of Defendant do not rise to the level of a constitutional violation under §1983 and, therefore, cannot establish that this Defendant was deliberately indifferent.

## SECOND AFFIRMATIVE DEFENSE – DEFENDANTS ACTED IN GOOD FAITH/IMMUNITY

1. At all times relevant herein all Defendants acted in good faith in the performance of their official duties and without violating Plaintiff's statutory or constitutional rights of which a reasonable person would have known. Therefore, the doctrine of qualified immunity protects the Defendants from this lawsuit.

2. "Qualified immunity shields [officials] from civil damages liability so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *Leaf v. Shelnutt*, 400 F.3d 1070, 1079-80 (7th Cir. 2005). The protection of qualified immunity applies regardless of whether the government official's error is a mistake of

law, mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

3. The United States Supreme Court regards as beneficial the two-step sequence for resolving government officials' immunity claims articulated in *Saucier v. Katz*. 533 U.S. 194, 200 (2001); see also *Pearson*, 555 U.S. at 236 ("Although we now hold that the *Saucier* protocol should not be regarded as mandatory in all cases, we continue to recognize that it is often beneficial…"). First, a court must decide whether the facts, as alleged by the plaintiff, make out a violation of a constitutional right. *Id.* at 232. Second, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* In order to show that the right was clearly established, the plaintiff must show that the defendant's "violation [of the constitutional right] was so clear that an official would realize he or she was violating an inmate's constitutional rights." *Borello v. Allison*, 446 F.3d 742, 750 (7th Cir. 2006).

4. The Plaintiff's Complaint alleges that Defendants provided medical care and treatment to the Plaintiff while he was incarcerated at a county jail, for which the law applies the same immunity standards as to state-run prisons. At no time did the Defendants render medical care that was so clearly a violation of the Plaintiff's constitutional rights that the Defendants would realize they were providing medical care tantamount to cruel and unusual punishment. Thus, the doctrine of qualified immunity applies and shields the Defendants from this litigation.

5. This Defendant further recognizes that the Seventh Circuit has suggested, in dicta, that qualified immunity is not available to private medical personnel in jails or prisons. See *Petties v. Carter*, 836 F.3d 722, 733-34 (7th Cir. 2016). However, the United States Supreme Court's decision in *Filarsky v. Delia* controls and establishes that immunity is available to a

16

government's private contractors who are performing jobs that, otherwise, would be performed by state agents, who unquestionably could assert qualified immunity.

6. In *Filarsky*, the Supreme Court, unanimously, held that a private attorney hired by a municipality to perform a task was entitled to claim qualified immunity. *Filarsky v. Delia*, 566 U.S. 377, 390 (2012) ("Affording immunity not only to public employees but also to others acting on behalf of the government similarly serves to 'ensure that talented candidates are not deterred by the threat of damages suits from entering public service'") (internal marks omitted).

7. Other Circuits follow *Filarsky* and apply qualified immunity to private medical providers working in state-run prisons. In a decision handed down after *Petties*, the Tenth Circuit Court of Appeals found that *Filarsky* controlled and applied qualified immunity to a private doctor working in a state prison. *Estate of Lockett v. Fallin*, 841 F.3d 1098, 1108-09 (10th Cir. 2016) ("Dr. Doe stands in the same position as the attorney in *Filarsky* - he was a private party hired to do a job for which a permanent government employee would have received qualified immunity. Thus, we conclude that qualified immunity applies to Dr. Doe").

8. The Supreme Court's *Filarsky* decision, combined with the case law of other Courts of Appeal, establishes that qualified immunity applies to private medical providers performing medical services in a jail or prison. Thus, Defendant has a non-frivolous argument for extending, modifying, or reversing existing law in this Circuit.

### THIRD AFFIRMATIVE DEFENSE –
### FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

1. Federal law mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a); *Pavey*, 544 F.3d at 740.

2. The administrative remedies applicable to the Plaintiff in the instant action can be found through the Will County Sheriff's policies and procedures for the Will County Jail. The Plaintiff was required to complete the necessary administrative steps set forth by the Will County Sheriff's policies and procedures for the Will County Jail in order to exhaust his remedies.

3. To the extent Plaintiff has failed to exhaust his administrative remedies prior to the filing of this suit, his claims are barred by 42 U.S.C. § 1997(e)(a) and the applicable Will County Sheriff's policies and procedures for the Will County Adult Detention Facility.

## FOURTH AFFIRMATIVE DEFENSE – FAILURE TO MITIGATE/REASONABLE CARE

1. The sole proximate cause of the injuries and damages alleged by the Plaintiff was the Decedent's failure to exercise reasonable care for his own wellbeing.

2. The Decedent had a duty to take reasonable measures for his own wellbeing and healthcare, including but not limited to reporting potential health concerns, medications, prescriptions, and conditions, including but not limited to his relevant medical history to healthcare staff at the Will County Jail, and not causing medical conditions as a result of his own action or inaction.

3. The Decedent failed to exercise reasonable care for his own wellbeing and healthcare by, but not limited to, taking actions which caused harm to himself, and failing to report or otherwise notify healthcare staff at the Will County Jail of potential health concerns, conditions, medical history, and/or treatment.

4. The Decedent also had a duty to mitigate damages and failed to mitigate his damages as required by law.

WHEREFORE, Defendant WELLPATH prays for dismissal of the Plaintiff's Complaint with prejudice and judgment in favor of the Defendant and against Plaintiff, with costs assessed

to Plaintiff.  In the alternative, any award granted the Plaintiff shall be reduced by the Decedent's proportionate share of liability and fault.

                                                  Respectfully submitted,

                                                  CASSIDAY SCHADE LLP

                                                  By: */s/ Ronald E. Neroda*
                                                       One of the Attorneys for Defendant WELLPATH

Matthew H. Weller | 6728685
Ronald E. Neroda | 6297286
CASSIDAY SCHADE LLP
222 West Adams Street, Suite 2900
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 (Fax)
mweller@cassiday.com
rneroda@cassiday.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2020, I electronically filed the foregoing Answer and Affirmative Defenses with the clerk of the court for the Northern District of Illinois using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

/s/ Ronald E. Neroda

9582288